NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, | : : : : : |
| Plaintiff, | Civil Action No. 11-3062 (FSH) |
| v. | : : : |
| CRYSTAL CLEAR INDUSTRIES, ET AL., | : OPINION : |
| Defendants. | : : |

**I.    INTRODUCTION**

This matter comes before the Court on the motion of the plaintiff for leave to effectuate service of process by publication. For the reasons set forth below, the motion for leave to effectuate by publication is granted with modification to the relief sought.

**II.    BACKGROUND**

The Guardian Life Insurance Company of America ("Guardian") had issued a life insurance policy to Carolyn Egerman ("decedent"), who passed in July 2009. (Compl. ¶¶ 10, 15–16, May 26, 2011, ECF No. 1.) According to the decedent's application, the owners are "Split $" as follows: defendant Crystal Clear Industries to the extent of its contributions, and the decedent as to all else. (See id. ¶ 12.) Similarly, the application lists the primary beneficiaries as Crystal Clear to the extent of its contributions, and the decedent's husband as to the balance. (Id. ¶ 13.) As to contingent beneficiaries, the application listed the decedent's estate and her

1

children, among them Catherine Chairenza.  (Id. ¶ 14.)  At the time of the decedent's passing, her husband had already passed as well.  (Id. ¶ 17.)  Crystal Clear claims entitlement to receive all the proceeds of the policy.  (Id. ¶¶ 17, 20.)  The contingent beneficiaries also claim entitlement to receive all the proceeds of the policy.  (Id. ¶ 23.)

On May 26, 2011, Guardian filed an interpleader action pursuant to 28 U.S.C. § 1335 in the United States District Court, District of New Jersey, against Crystal Clear and the decedent's children.  (Compl. ¶¶ 1–6, 25–26.)  Summons were executed as to all the defendants except for Catherine Chairenza.  (See Executed Summons, ECF Nos. 7–9.)  On August 18, 2011, the Court directed Guardian to move the case by requesting default, or the Court would dismiss the action.  (Order, Aug. 18, 2011, ECF No. 10.)  Guardian requested default against the defendants who had been served.  (See Requests for Default, Aug. 26, 2011, ECF Nos. 11–13.)  As to Ms. Chairenza, Guardian submitted a letter detailing its unsuccessful efforts to locate and serve her.  (Pl.'s Letter, Sept. 7, 2011, ECF No. 14.)  In its letter, Guardian also advised that it believed that it had no choice but to subpoena Ms. Chairenza's siblings to determine her current address.  (Id. at 2.)

On February 3, 2012, Guardian moved to serve Ms. Chairenza by publication, pursuant to Federal Rule of Civil Procedure 4(e)(1) and either New Jersey Court Rule 4:4-5[1] or Colorado Rule of Civil Procedure 4(e).  (Mot. for Service by Publication, Feb. 3, 2012, ECF No. 15.)  Specifically, Guardian seeks to serve by publication by placing a legal notice once in the Castle Rock Douglas County News Press and once in the Aurora Sentinel.  (See Pl.'s Br. at 6, Feb. 3, 2012, ECF No. 15.)  Guardian certifies its attempts to serve or contact Ms. Chairenza as follows:

---

[1] Guardian cites to New Jersey Court Rule 4:4-5(c) in its brief but that provision does not technically exist anymore.  Rule 4:4-5(c) has been amended and former subsection (c) is now embodied in Rule 4:4-5(a)(3).

1. On June 6, 2011, Guardian unsuccessfully attempted personal service at the address on file for Ms. Chairenza, that is, 308 Deer Crossing, Castle Rock, CO 80104. (Pennacchio Certif. ¶ 3, Feb. 3, 2012, ECF No. 15.) Guardian's process server advised that Ms. Chairenza had moved two years earlier. (Id.)

2. At some undated time, Guardian unsuccessfully attempted to call Ms. Chairenza at the phone number on file for her. (Id. ¶ 4.) The phone number corresponded to the land-line of the Deer Crossing address. (Id.) Ms. Chairenza's former mother-in-law answered and stated that she did not have any contact information for Ms. Chairenza. (Id.)

3. Guardian employed its special investigations unit, who conducted searches by social media and Accurint, and located a person named Kathie Chairenza at 830 South Ironton Street, 45S, Aurora, CO 80012. (Id. ¶¶ 5–6.) On June 8, 2012, Guardian unsuccessfully attempted personal service at this address but was unable to access the location because it was a secured building. (Id. ¶ 7.)

4. On August 4, 2011, Guardian again unsuccessfully attempted personal service at the South Ironton address. (Id.)

5. By an August 10, 2011 letter, Guardian mailed a waiver of personal service and copy of the Complaint to the South Ironton address, but the correspondence was returned with indications that Ms. Chairenza was not known at this address and that the correspondence could not be forwarded. (Id. ¶ 8.)

6. On October 25, 2011, Guardian deposed Ms. Chairenza's sister. (Id. ¶ 9.) She testified that she had not spoken with Ms. Chairenza since an argument in December 2010 and that she did not know where she worked, but provided her last known phone number and address, namely, 505 Scott Boulevard, Castle Rock, CO 80104. (Id. ¶¶ 10–14.) By an October 25, 2011 letter, Guardian mailed a waiver of personal service and copy of the Complaint to the Scott Boulevard address, but the correspondence was returned with indications that Ms. Chairenza was not known at this address and that the correspondence could not be forwarded. (Id. ¶ 16.)

7. On November 11, 2011, Guardian unsuccessfully attempted personal service at the Scott Boulevard address. (Id. ¶ 15.) Guardian's process server advised that the address was an apartment complex, and Guardian had no specific unit number for Ms. Chairenza. (Id.)

8. At some undated time, Guardian unsuccessfully attempted to call Ms. Chairenza at the phone number provided at her sister's deposition. (Id. ¶ 17.) Guardian was advised that the number did not belong to Ms. Chairenza. (Id.)

9. Based on this same number, Guardian's special investigations unit obtained an address, namely, 4714 North Bearily Way, Castle Rock, CO 80109. (Id. ¶ 18.) On November 28, 2011, Guardian unsuccessfully attempted personal service at the North Bearily Way address. (Id. ¶ 19.) Guardian's process server advised that the North Bearily Way address did not exist. (Id.)

3

  10. By a November 28, 2011 letter, Guardian mailed a waiver of personal service and copy of the Complaint to the North Bearily Way address, but the correspondence was returned with indications that Ms. Chairenza was not known at this address and that the correspondence could not be forwarded.  (Id. ¶ 20.)

On April 24, 2012, the Court directed that Guardian provide a supplemental letter addressing the effect, if any, of 28 U.S.C. § 2361 on its motion for service by publication. (Order, Apr. 24, 2012, ECF No. 16.)  On May 1, 2012, Guardian submitted a letter responsive to the Court's inquiry.  (Pl.'s Letter, May 1, 2012, ECF No. 17.)

**III.** **DISCUSSION**

 **A.** **Fed. R. Civ. P. 4(e)**

Federal Rule of Civil Procedure 4(e) states:

Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

 (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

 (2) doing any of the following:

  (A) delivering a copy of the summons and of the complaint to the individual personally;

  (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

  (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Before considering state law service of process under Rule 4(e)(1), the Court considers whether other "federal law provides otherwise" and thereby limits the means of service. Specifically, the Court considers whether statutory interpleader's process and procedure

4

provision, 28 U.S.C. § 2361, constitutes federal law that supercedes the directions for service under Rule 4(e).  Compared to Rule 4(e), 28 U.S.C. § 2361 provides little direction as to the manner of service.  Section 2361 provides for nationwide service and states that "process . . . shall be addressed to and served by the United States marshals for the respective districts where the claimants reside or may be found."  28 U.S.C. § 2361.  Amendments to the Federal Rules of Civil Procedure, however, have modified Section 2361 through the Rules Enabling Act.  Under this act, "Congress ordered that, in matters of 'practice and procedure,' . . . the Federal Rules shall govern, and '[a]ll laws in conflict with such rules shall be of no further force or effect' . . . ."  Henderson v. United States, 517 U.S. 654, 656 (1996) (citing 28 U.S.C. § 2072) (alterations in Henderson).  The Supreme Court has clarified that "in actions arising under federal law, . . . the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules."  Henderson, 517 U.S. at 656.  Moreover, as the Supreme Court has recognized, "Rule 4 changes made operative in 1983 completed a shift in responsibility for service from the United States marshals to the plaintiff."  Id. at 662; see also Fed. R. Civ. P. 4 advisory committee notes (1993 Amendments) (noting that the 1983 revisions relieved the U.S. Marshals of the burden of serving process except in specific contexts, e.g., service on behalf of the U.S. Government, service on parties proceeding *in forma pauperis*, or service on a party proceeding as a seaman).  Thus, the Rules Enabling Act and the 1983 Amendments to the Federal Rules of Civil Procedure modified Section 2361 such that U.S. Marshals are no longer required to serve process.  See, e.g., McGuckin v. Metro. Life Ins. Co., Civ. No. 95-5584, 1996 WL 107406, at *2 (E.D. Pa. Mar. 4, 1996); see also Star Ins. Co. v. Cedar Valley Express, 273 F. Supp. 2d 38, 42 n.4 (D.D.C. 2002) (noting that notwithstanding Section 2361, "it appears to be

the practice of plaintiffs in interpleader actions to directly serve process on claimants, without burdening the U.S. marshals"). But see Great W. Cas. Co. v. Fredrics, Civ. No. 10-267, 2010 WL 4818010, at *3 (W.D.N.C. Nov. 22, 2010) (ordering marshals to serve summons and complaint pursuant to 28 U.S.C. § 2361).

Analogously, amendments to Rule 4 should now permit the full gamut of options for serving process in statutory interpleader actions. First, Section 2361 is not specific as to the particular manner of executing service — Section 2361 specifies who serves, not how — and thus service consistent with Rule 4 should be available. See United Indus. Corp. v. Nuclear Corp. of Am., 237 F. Supp. 971, 981 (D. Del. 1964) (noting that Section 2361 "makes no provision for the type of action to be taken to effectuate service"). Second, the 1993 Amendments simplified manner of service by eliminating, consolidating, and rewriting various subdivisions into revised subdivisions (e) and (f) to "provide[] for service on persons anywhere, subject to constitutional and statutory constraints." Fed. R. Civ. P. 4(e) advisory committee notes (1993 Amendments) ("Service of the summons under this subdivision does not conclusively establish the jurisdiction of the court over the person of the defendant."). And as the Supreme Court has noted "the core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." Henderson, 517 U.S. at 672; see also id. at 671 ("Service of process, we have come to understand, is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind[, subject matter jurisdiction], or against a particular individual or entity[, personal jurisdiction].") Also, access to subsection (e)(1) does not abridge, enlarge, or modify any substantive right nor does it expand the Court's

6

jurisdiction, which is already national in scope under Section 2361.  See id. at 664 (noting that revised rules of civil procedure"[can]not abridge, enlarge or modify any substantive right") (quoting 28 U.S.C. § 2072(a)).  This result is consistent with other decisions in this district permitting service under state law for statutory interpleader actions.  See, e.g., Am. Gen. Life Ins. Co. v. Jae, Civ. No. 08-74, 2010 WL 3001198, at *2 (D.N.J. July 28, 2010); Prudential Ins. Co. of Am. v. Bramlett, Civ. No. 08-119, 2010 WL 2696459, at *1 (D.N.J. July 6, 2010).

Accordingly, the Court considers state law to evaluate Guardian's request to effect service by publication.

### B. New Jersey

Under New Jersey law, personal service is the primary method of effecting service.  See N.J. Ct. R. 4:4-4(a), 4:4-5(a).  New Jersey Court Rules 4:4-3 and 4:4-4(a) prescribe the methods of effecting personal service within the state.  Substitute or constructive service, however, is permitted when personal service within the state cannot be effected.  See N.J. Ct. R. 4:4-4(b), 4:4-5.  For *in personam jurisdiction*, New Jersey Court Rule 4:4-4(b) provides the methods of substitute or constructive service, such as personal service outside the state, simultaneous mailings by ordinary and certified (or registered) mail, and "as provided by court order, consistent with due process of law." N.J. Ct. R. 4:4-4(b)(1), (b)(3).  For *in rem* and *quasi in rem jurisdiction*, New Jersey Court Rule 4:4-5 provides the methods for personal, substitute, and constructive service, such as service by publication.  Regardless of the type of action, substitute or constructive service requires a demonstration of due diligence that satisfies the requirements specified in New Jersey Court Rule 4:4-5(b).  See N.J. Ct. R. 4:4-5(a); 4:4-4 (b)(1) (cross-referencing Rule 4:4-5(b)); N.J. Ct. R. 4:4(b)(3) (noting that service by a court order consistent

7

with due process is precluded "[i]f service can be made by any of the modes provided by this rule"); see also Garrett v. Matisa, 394 N.J. Super. 468, 475–76 (Ch. Ct. 2007) (using affidavit requirement in Rule 4:4-5 as model for unique notice issue).[2]

Diligence has no fixed standard. See Modan v. Modan, 327 N.J. Super. 44, 48 (App. Div. 2000). The diligence exercised and the alternative service requested must meet the constitutional requirements of due process. Cf. O'Connor v. Abraham Altus, 67 N.J. 106, 126–127 (1975). Namely, the "elementary and fundamental requirement of due process" is that there be "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." O'Connor, 67 N.J. at

---

[2] Guardian argues that New Jersey Court Rule 4:4-5 authorizes service by publication. By its terms, Rule 4:4-5 applies to actions *in rem* or *quasi in rem* and Guardian argues without explanation that interpleader actions are one of these types of actions. The debate of whether interpleader actions are *in personam* or *in rem* has persisted for nearly a century and appears to be unresolved to this day. Cf. Wilson v. Canada Life Assurance Co., Civ. No. 08-1258, 2009 WL 532830, at *10 nn.11–12 (E.D. Pa. Mar. 3, 2009) (citing N.Y. Life Ins. Co. v. Dunlevy, 241 U.S. 518 (1916)). Compare Metro. Prop. & Cas. Ins. Co. v. Shan Trac Inc., 324 F.3d 20, 25 (1st Cir. 2003) (stating that interpleader actions are *in personam*) with Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 52 (1st Cir. 2004) (stating that, notwithstanding Shan Trac, "this sort of interpleader action should be considered *in rem*."). But whether the Court resolves that interpleader is *in personam*, *in rem*, or *quasi in rem*, the Court can access Guardian's request for relief, service by publication, either through Rule 4:4-5 or by court order pursuant to 4:4-4(b)(3). And as the Supreme Court has noted, the concerns of notice "do not depend upon a classification for which the standards are so elusive and confused generally and which, being primarily for state courts to define, may and do vary from state to state." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 312 (1950); see also see also Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 796 (1983) ("The decision in *Mullane* rejected one of the premises underlying this Court's previous decisions concerning the requirements of notice in judicial proceedings: that due process rights may vary depending on whether actions are *in rem* or in *personam*."); Shaffer v. Heitner, 433 U.S. 186, 207 n.22 (1977) ("All proceedings, like all rights, are really against persons. Whether they are proceedings or rights in rem depends on the number of persons affected.") (citation omitted). What ultimately matters is that the notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 399 U.S. at 314.

126 (quoting Mullane, 339 U.S. at 314); see also Dusenbery v. United States, 534 U.S. 161, 168 (2002) ("Since Mullane was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice."). Accordingly, when considering diligence, the Court conducts a fact-sensitive inquiry "measured by the qualitative efforts of a specific plaintiff seeking to locate and serve a specific defendant." Modan, 327 N.J. Super. at 48 (internal citation and quotation marks omitted). Diligence requires that a plaintiff follow up on information it possesses or can reasonably obtain, but it does not necessarily mean a plaintiff take every conceivable action. Id. at 48–49 (collecting cases).

Service by publication, as requested here, "is hardly favored and is the method of service that is least likely to give notice." M & D Assocs. v. Mandara, 366 N.J. Super. 341, 353 (App. Div. 2004) (citing Modan, 327 N.J. Super. at 48). "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." Mullane, 339 U.S. at 315. Nevertheless, "in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." Id. at 317.

**C.  Analysis**

Here, Guardian has demonstrated its diligence by actively searching for and following up on the information it obtained regarding Ms. Chairenza. Initially, Guardian unsuccessfully attempted personal service on Ms. Chairenza at the address in its files but discovered she had moved two years earlier. (Pennacchio Certif. ¶ 3.) Guardian also unsuccessfully called Ms.

Chairenza at the phone number in its files.  (Id. ¶ 4.)  Thereafter, Guardian conducted searches for her current address, deposed one of her siblings, and unsuccessfully attempted service in person and service by mail at each of the follow-up addresses.  (Id. ¶¶ 5–20, Exs. B, C.)  In all, Guardian conducted social media and public record searches, deposed one of Ms. Chairenza's siblings, attempted personal service on Ms. Chairenza five times at four different addresses, attempted to call her on both phone numbers that had been obtained, and attempted service by mail three times at three different addresses.  The record demonstrates that Guardian's efforts were exhaustive and that Guardian diligently followed up on each lead it acquired.  Although Guardian might not have taken every conceivable action, its conduct demonstrates that it followed up on information it possessed or could have reasonably obtained, and that its efforts will meet the constitutional requirements of due process.  See Modan, 327 N.J. Super. at 48–49; accord Mullane, 339 U.S. at 314–15.

Although Guardian has demonstrated its diligence in attempting to find and serve Ms. Chairenza, the Court does not agree with the details of Guardian's proposed service.  Guardian proposes placing a legal notice just once in the Castle Rock Douglas County News Press and just once in the Aurora Sentinel;[3] there would be no service by mail to any address.  (See Pl.'s Br. at 6.)  On the one hand, Guardian's request has sense to it.  Ms. Chairenza's current address is unknown and thus mailing copies to her in addition to publication, as normally required by New Jersey Court Rule 4:4-5, will likely be futile.  Also, whether Guardian publishes notice once or many times, the chance that Ms. Chairenza will see it remains remote.

---

[3] The Castle Rock Douglas County News Press is the official legal publication for Douglas County, Colorado, which includes Castle Rock. (See Pl.'s Br. at 6–7.)  The Aurora Sentinel is the local newspaper for Aurora, Colorado.  (Id. at 7.)

On the other hand, the Court wants to ensure that notice is reasonably calculated under these circumstances to provide notice to Ms. Chairenza and to afford her an opportunity to be heard. Accordingly, the Court will modify Guardian's request in two regards. First, the Court's order will require service by mail. Consistent with New Jersey Court Rule 4:4-5, the Court will require that Guardian mail Ms. Chairenza a copy of the complaint, by regular mail and certified mail, to her last three known addresses (South Ironton address, Scott Boulevard address, and North Bearily Way address). Second, the Court's order will require more than one publication in the proposed local news papers. Having consulted other rules concerning service by publication, namely, Colorado Rule of Civil Procedure 4(g) and 28 U.S.C. § 1655, the Court will require that publication occur in each of the designated newspapers once a week for six consecutive weeks.

Because the Court finds that service by publication is permissible under New Jersey law, the Court need not consider service under Colorado law.

## IV. CONCLUSION

For the reasons stated herein, the plaintiff's motion for leave to effectuate substitute service is granted as to service pursuant to New Jersey law. The plaintiff shall serve Catherine Chairenza consistent with the requirements of N.J. Ct. R. 4:4-5, modified as follows: The plaintiff shall serve Ms. Chairenza (1) by placing notice once a week for six consecutive weeks in both the Castle Rock Douglas County News Press and the Aurora Sentinel; and (2) by regular mail and certified mail at the following addresses: (a) 830 South Ironton Street, 45S, Aurora, CO 80012; (b) 505 Scott Boulevard, Castle Rock, CO 80104; (c) 4714 North Bearily Way, Castle Rock, CO 80109.

The Court shall issued an order consistent with this opinion.

                                       s/*Michael A. Hammer*
                                       **UNITED STATES MAGISTRATE JUDGE**

Date: May 22, 2012